IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| Spring Design, Inc., | NO. C 09-05185 JW |
| Plaintiff, | **ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT** |
| v. | |
| Barnesandnoble.com, LLC, | |
| Defendant. | |

## I. INTRODUCTION

Spring Design, Inc. ("Plaintiff") brings this action against Barnesandnoble.com, LLC ("Defendant") alleging, *inter alia*, misappropriation of trade secrets and violations of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200, *et. seq.* Plaintiff alleges that Defendant used Plaintiff's confidential information to develop a competing eReader device, the NOOK, in violation of the parties' non-disclosure agreement.

Presently before the Court are: (1) Defendant's Motion for Summary Judgment;[1] and (2) Plaintiff's Motion for Summary Judgment.[2] The Court conducted a hearing on November 22, 2010. Based on the papers submitted to date and oral argument, the Court GRANTS in part and DENIES in part Defendant's Motion for Summary Judgment and DENIES Plaintiff's Motion for Summary Judgment.

---

[1] (hereafter, "Defendant's Motion," Docket Item No. 145 (filed under seal).)

[2] (hereafter, "Plaintiff's Motion," Docket Item No. 151 (filed under seal).)

## II.  BACKGROUND

**A.     Undisputed Facts**

Plaintiff is an eReader development company founded in 2006 by Dr. Albert Teng and Jack Yuan.[3]  Defendant is the e-commerce and digital products subsidiary of Barnes & Noble, Inc.  (Kash Decl., Ex. 20.)

In 2006 and 2007, Plaintiff filed several patent applications which claim different variations of an eReader with a dual-display design, consisting of an electronic paper display ("EPD") and a liquid crystal display ("LCD").[4]  On September 14, 2006, Plaintiff filed Provisional Patent App. No. 60/844,979 (the "'979 provisional"), entitled "Dual Display Design for Smartphone/PDA Devices." (Kash Decl., Ex. 3.)  On September 29, 2006, Plaintiff filed Provisional Patent App. No. 60/848,538 (the "'538 provisional"), entitled "Heterogeneous Display Design for Consumer Devices/Appliances (Functions and Commands)."  (Id., Ex. 4.)  On November 20, 2006, Plaintiff filed U.S. Patent App. No. 11/602,539 (the "'539 application") and U.S. Patent App. No. 11/602,627 (the "'627 application"), both entitled, "Electronic Devices Having Complementary Dual Displays."  (Id., Exs. 5, 7).  On February 5, 2007, Plaintiff filed U.S. Patent App. No. 11/702,788 (the "'788 application") and U.S. Patent App. No. 11/702,789 (the "'789 application"), also both entitled, "Electronic Devices Having Complementary Dual Displays."  (Id., Exs. 6, 8.)

In 2009, Plaintiff and Defendant explored possible collaboration on an eReader.[5]  On February 12, 2009, in anticipation of their first meeting, Plaintiff and Defendant entered into a non-disclosure agreement ("NDA") in which the parties agreed not to disclose, reproduce, transmit or use the other's confidential information except to certain employees on a need-to-know basis.

---

[3]  (Declaration of Jennifer A. Kash in Support of Defendant Barnesandnoble.com, LLC's Motion for Summary Judgment, Ex. 1, hereafter, "Kash Decl.," Docket Item Nos. 147-50 (filed under seal); see also Plaintiff's Motion at 5.)

[4]  (See, e.g., Kash Decl., Exs. 3-8; Declaration of Elizabeth J. White in Support of Plaintiff's Opposition to Defendant's Motion for Summary Judgment, Ex. 10, hereafter, "White Opp'n Decl.," Docket Item No. 165 (filed under seal).)

[5]  (See, e.g., Kash Decl., Ex. 51; Declaration of Elizabeth J. White in Support of Plaintiff Spring Designs, Inc.'s Notice of Motion and Motion for Summary Judgment, Ex. P, hereafter, "White Decl.," Docket Item No. 153 (filed under seal).)

(White Decl., Ex. H.) The NDA acknowledges that, in the event of a breach, the other party will have no adequate remedy in money or damages and shall be entitled to seek equitable relief. (Id.)

From February to October 2009, Plaintiff and Defendant conducted several meetings and exchanged emails regarding Plaintiff's eReader technology. (Kash Decl., Ex. 51; White Decl., Ex. P.) For example, on February 17, 2009, Plaintiff presented its design for an interactive dual-screen navigation eReader to Phil Baker, a product strategy consultant hired by Defendant. (Kash Decl., Ex. 17; White Decl., Ex. J.) Plaintiff and Defendant again met and discussed Plaintiff's prototype eReader on March 20 and May 13, 2009. (Kash Decl., Ex. 1; White Decl., Ex. R.)

On October 20, 2009, Defendant announced the release of the NOOK—its Android-based, dual-screen eReader. (Kash Decl., Ex. 20; White Decl., Ex. DD.) In 2010, Plaintiff launched its competing eReader device, the Alex, which is also a dual-screen eReader. (Kash Decl., Ex. 1; see also Plaintiff's Motion at 5.)

**B.  Procedural History**

On November 2, 2009, Plaintiff filed its original Complaint. (See Docket Item No. 1.) On November 11, 2009, Plaintiff filed an Amended Complaint. (See Docket Item No. 11.) On December 1, 2009, the Court denied Plaintiff's Motion for a Preliminary Injunction. (See Docket Item No. 77.) On January 12, 2010, Plaintiff filed a Second Amended Complaint, which is Plaintiff's operative Complaint. (See Docket Item No. 85.) On April 8, 2010, the Court denied Defendant's Motion to Dismiss Plaintiff's California UCL claim and New York common law claims. (hereafter, "April 8 Order," Docket Item No. 103.)

In October 2010, the parties filed their Cross-Motions for Summary Judgment. (See Docket Item Nos. 145, 151 (filed under seal).) On November 22, 2010, the Court conducted a hearing on these Motions. After the hearing, the Court referred the parties to the Special Master to prepare a chronology of events relevant to the parties' Motions. (See Docket Item No. 180.) On December 20, 2010, the Special Master submitted a chronology of undisputed facts for the Court's consideration. (See Docket Item No. 185 (filed under seal).)

Presently before the Court are the parties' Cross-Motions for Summary Judgment.

3

### III. STANDARDS

Summary judgment is proper if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The purpose of summary judgment "is to isolate and dispose of factually unsupported claims or defenses." Celotex v. Catrett, 477 U.S. 317, 323-24 (1986).

The moving party "always bears the initial responsibility of informing the district court of the basis for its motion . . . ." Celotex, 477 U.S. at 323. "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (a) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (b) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). "If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . grant summary judgment if the motion and supporting materials--including the facts considered undisputed--show that the movant is entitled to it." Fed. R. Civ. P. 56(e).

When evaluating a motion for summary judgment, the court views the evidence through the prism of the evidentiary standard of proof that would pertain at trial. Anderson v. Liberty Lobby Inc., 477 U.S. 242, 255 (1986). The court draws all reasonable inferences in favor of the non-moving party, including questions of credibility and of the weight that particular evidence is accorded. See, e.g., Masson v. New Yorker Magazine, Inc., 501 U.S. 496, 520 (1992). The court determines whether the non-moving party's "specific facts," coupled with disputed background or contextual facts, are such that a reasonable jury might return a verdict for the non-moving party. T.W. Elec. Serv. v. Pac. Elec. Contractors, 809 F.2d 626, 631 (9th Cir. 1987). In such a case, summary judgment is inappropriate. Anderson, 477 U.S. at 248. However, where a rational trier of fact could not find for the non-moving party based on the record as a whole, there is no "genuine issue for trial." Matsushita Elec. Indus. Co. v. Zenith Radio, 475 U.S. 574, 587 (1986).

Although the district court has discretion to consider materials in the court file not referenced in the opposing papers, it is not so required. See Carmen v. San Francisco Unified Sch. Dist., 237 F.3d 1026, 1028-30 (9th Cir. 2001). "The district court need not examine the entire file for evidence establishing a genuine issue of fact . . . ." Id. at 1031. However, when the parties file cross-motions for summary judgment, the district court must consider all of the evidence submitted in support of both motions to evaluate whether a genuine issue of material fact exists which would preclude summary judgment for either party. The Fair House Council of Riverside Cty., Inc. v. Riverside Two, 249 F.3d 1132, 1135 (9th Cir. 2001).

## IV. DISCUSSION

As a preliminary matter, since the parties have filed most of the evidence supporting and opposing the Motions under seal, this Order only summarizes the sealed evidence and provides general citations to the sealed evidence but does not reveal their contents to protect the parties' confidential information.

**A.      Defendant's Motion for Summary Judgment**

Defendant moves for summary judgment on the grounds that it is entitled to judgment as a matter of law on Plaintiff's causes of action for: (1) misappropriation of trade secrets; (2) breach of contract; and (3) violation of California's Unfair Competition Law under Cal. Bus. & Prof. Code §§ 17200 *et. seq*. (Defendant's Motion at 1-2.) The Court considers each of Plaintiff's claims in turn.

**1.      Misappropriation of Trade Secrets**

Defendant moves for summary judgment on Plaintiff's two causes of action for misappropriation claims on the grounds that: (1) Plaintiff's information does not qualify for trade secret protection; and (2) Plaintiff has no proof that Defendant actually misappropriated any of Plaintiff's confidential information. (Defendant's Motion at 13-25.) The Court addresses each of Defendant's grounds in turn.

**a.      Whether Plaintiff's Information Qualifies for Trade Secret Protection**

Defendant contends that Plaintiff's information does not qualify for trade secret protection because: (1) Plaintiff disclosed its information to the public in its published patent applications; (2)

5

other publicly available eReader devices incorporate all of Plaintiff's trade secrets; and (3) Plaintiff cannot meet its burden to show that its information has independent economic value. (Defendant's Motion at 13-21.)

Under California's Uniform Trade Secrets Act, a "trade secret" is defined as information that:

(1) Derives independent economic value, actual or potential, from not being generally known to the public or to other persons who can obtain economic value from its disclosure or use; and

(2) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

Cal. Civ. Code § 3426.1(d). "[I]nformation can be a trade secret even though it is readily ascertainable, so long as it has not yet been ascertained by others in the industry." ABBA Rubber Co. v. Seaquist, 235 Cal. App. 3d 1, 21 (Cal. Ct. App. 1991). Moreover, "[c]ombinations of public information from a variety of different sources when combined in a novel way can be a trade secret." 02 Micro Intern. Ltd. v. Monolithic Power Systems, Inc., 420 F. Supp. 2d 1070, 1089 (N.D. Cal. 2006). "It does not matter if a portion of the trade secret is generally known, or even that every individual portion of the trade secret is generally known, as long as the combination of all such information is not generally known." Id. at 1089-90; see also Verigy US, Inc. v. Mayder, No. C-07-04330, 2008 U.S. Dist. LEXIS 28315, at *16-17 (N.D. Cal. Feb. 29, 2008). Finally, whether information is publicly known is "relative" and "requires a fact-intensive analysis."[6] DVD Copy Control Ass'n., Inc. v. Bunner, 116 Cal. App. 4th 241, 252 (Cal. Ct. App. 2004).

### i.  Whether Plaintiff's Trade Secrets Were Disclosed in Published Patent Applications

At issue is whether Plaintiff disclosed its trade secrets in its published patent applications.

"[I]t is well established that disclosure of a trade secret in a patent places the information comprising the secret into the public domain. Once the information is in the public domain and the

---

[6] "While ease of ascertainability is irrelevant to the definition of a trade secret, the assertion that a matter is readily ascertainable by proper means remains available as a defense to a claim of misappropriation." ABBA Rubber, 235 Cal. App. 3d at 21(citation and quotations omitted).

element of secrecy is gone, the trade secret is extinguished . . . ." <u>Ultimax Cement Mfg. Corp v. CTS Cement Mfg. Corp.</u>, 587 F.3d 1339, 1355 (Fed. Cir. 2009) (citation and quotations omitted); see also <u>Forcier v. Microsoft Corp.</u>, 123 F. Supp. 2d 520, 528 (N.D. Cal. 2000) (alleged trade secrets were not entitled to protection because they had been placed in the public domain either in patents or in patent applications).

Here, Plaintiff had designed four categories of trade secrets. (<u>See</u> White Opp'n Decl., Ex. 14.) In support of its contention that Plaintiff's trade secrets information were publicly known, Defendant presents the following evidence: (1) an expert declaration from Dr. Aris Silzars opining that Plaintiff's patent applications disclosed Plaintiff's trade secrets;[7] and (2) a claim chart showing how Plaintiff's published patent applications disclosed each element of Plaintiff's alleged trade secrets.[8] In response, Plaintiff offers the following evidence: (1) an expert declaration from Dr. Gary Nutt[9] opining that Plaintiff's patent applications did not disclose certain aspects of Plaintiff's

---

[7] (Declaration of Dr. Aris Silzars in Support of Motion for Summary Judgment, hereafter, "Silzars Decl.," Docket Item No. 152 (filed under seal).) Although the Court had previously granted Defendant's Motion to seal this declaration, for the purposes of these Motions, the Court finds that the referenced materials are not sealable under Civ. L.R. 79.

[8] (Defendant's Motion, Appendix A.)

[9] Defendant moves to strike the Declaration of Dr. Gary Nutt in Support of Plaintiff's Opposition to Motion for Summary Judgment on the grounds that it is untimely. (Docket Item No. 172.) Federal Rule of Civil Procedure 26(a)(2)(B) provides that disclosure of the identity of a witness who will provide expert testimony "must . . . be accompanied by a written report . . . contain[ing] . . . a complete statement of all opinions the witness will express and the basis and reasons for them." Fed. R. Civ. P. 26. However, "[i]f the opinions and analyses offered by [the expert] in [the] summary judgment phase do not differ substantially from his opinions offered in his expert report . . . they are not 'late' for purposes of Rule 26(a), and thus there is no risk of 'ambush' and no reason to exclude [the expert's] declaration." <u>Rowe Int'l. Corp. v. Ecast, Inc.</u>, 586 F. Supp. 2d 924, 933-36 (N.D. Ill. 2008). Here, for the purposes of these Motions, the Court only relied on the general content of Dr. Nutt's declaration, which the Court finds does not differ substantially from the opinions outlined in Dr. Nutt's expert report. However, the Court notes that there may be other contents or opinions that the Court did not directly rely upon that may not have previously been disclosed in Dr. Nutt's expert report. Accordingly, the Court DENIES Defendant's Motion to Strike for the limited purpose stated here.

United States District Court / For the Northern District of California

trade secrets;[10] (2) deposition testimony from Dr. Silzars in which he admits that Plaintiff's patent applications do not disclose any of Plaintiff's trade secrets in their entirety;[11] and (3) deposition testimony from Dr. Teng, Plaintiff's co-founder, that the patent applications do not disclose Plaintiff's trade secrets because they were drafted and filed before Plaintiff had developed its software and human-computer interaction solutions.[12]

Upon review of the evidence submitted, the Court finds that Plaintiff's '979 provisional application disclosed all of the elements of Trade Secret Number 1 and thus, Defendant is entitled to summary judgment as to this trade secret. However, with respect to Trade Secret Numbers 2-4, the Court find that issues of fact preclude summary judgment.

### ii. Whether Plaintiff's Trade Secrets Were Disclosed in Other Publicly Available eReader Devices

At issue is whether other publicly available eReader devices, such as the Hanlin eReader, the Kindle 1, and the eDGe disclosed Plaintiff's alleged trade secrets.

Here, Defendant presents the following evidence in support of its contention that Plaintiff's trade secrets were publicly known: (1) an expert declaration from Dr. Silzars that Plaintiff's trade secrets are an obvious combination of other eReader elements;[13] (2) a chart showing how various combinations of other eReaders disclosed each element of Plaintiff's trade secrets;[14] and (3) a statement from Dr. Nutt's expert report that Plaintiff's eReader "combined the EPD screen of

---

[10] (Declaration of Gary Nutt in Support of Plaintiff's Opposition to Defendant's Motion for Summary Judgment, hereafter, "Nutt Decl.," Docket Item No. 153-9-18 (filed under seal).) Although the Court had previously granted Plaintiff's Motion to seal this declaration, for the purposes of these Motions, the Court finds that the referenced materials are not sealable under Civ. L.R. 79.

[11] (White Opp'n Decl., Ex. 9.)

[12] (White Opp'n Decl., Ex. 10.)

[13] (Silzars Decl. ¶¶ 65-230.)

[14] (Defendant's Motion, Appendix B.)

8

Kindle™ with the LCD screen with a touch screen interface of HTC G1 smartphone."[15]  (Kash Decl., Ex. 48 ¶ 53.)

In response, Plaintiff presents the following evidence: (1) an expert declaration from Dr. Nutt stating that no device disclosed the specific combination of Plaintiff's trade secrets;[16] (2) deposition testimony from Dr. Silzars in which he states that no single eReader disclosed Plaintiff's trade secrets in their entirety;[17] and (3) deposition testimony from NOOK designer Robert Brunner, in which he states that he was unaware of any dual-screen eReader where the LCD screen could display web and dynamic content.[18]

Based on the parties' submissions, the Court finds that the underlying facts show extensive dispute over whether prior art eReader devices disclosed all aspects of Plaintiff's trade secrets. Moreover, there are disputed issues of fact over whether the alleged trade secrets were readily ascertainable because their constituent elements were readily known from other available eReaders.[19]  Thus, the Court finds triable issues of fact preclude summary judgment on Plaintiff's trade secret claim.

### iii. Whether Plaintiff's Trade Secrets Have Independent Economic Value

At issue is whether Plaintiff's alleged trade secrets have sufficient economic value so as to qualify for trade secret protection.

To have independent value, a trade secret must be "sufficiently valuable and secret to afford an actual or potential economic advantage over others." Yield Dynamics, Inc. v. TEA Sys. Corp.,

---

[15] Although the Court had previously granted Defendant's Motion to seal this declaration, for the purposes of these Motions, the Court finds that the referenced materials are not sealable under Civ. L.R. 79.

[16] (Nutt Decl. ¶¶ 29-30.)

[17] (White Opp'n Decl., Ex. 9.)

[18] (White Decl., Ex. C.)

[19] Although the parties have discussed ascertainability in the context of trade secret protection, this defense is actually "based upon an absence of misappropriation, rather than the absence of a trade secret." ABBA Rubber, 235 Cal. App. 3d at 21.

9

154 Cal. App. 4th 547, 564 (Cal. Ct. App. 2007) (citation and quotations omitted). Independent economic value can be shown by "circumstantial evidence of the resources invested in producing the information, the precautions taken to protect its secrecy, and the willingness of others to pay for its access." Religious Tech. Ctr. v. Netcom On-Line Commc'n Servs., Inc., 923 F. Supp. 1231, 1253 (N.D. Cal. 1995) (citations omitted). "[I]nformation can have independent economic value even if there is no actual product on the market utilizing the information." Leatt Corp. v. Innovative Safety Tech., LLC, No. 09-1301, 2010 U.S. Dist. LEXIS 37382, at *18 (S.D. Cal. Apr. 15, 2010). Indeed, information can have independent economic value even if its value comes from a "negative" standpoint, such as "the results of lengthy and expensive research which proves that a certain process will not work . . . ." Courtesy Temp. Serv. v. Camacho, 222 Cal. App. 3d 1278, 1287 (Cal. Ct. App. 1990) (citation and quotations omitted).

Here, Defendant submits the following evidence in support of its contention that Plaintiff's trade secrets have no value: (1) the deposition testimony of Dr. Teng, in which he had difficulty articulating the meaning of certain parts of Plaintiff's trade secrets or assigning a dollar value to individual elements;[20] (2) the deposition testimony of Dr. Nutt, in which he cannot identify how certain elements of Plaintiff's trade secrets were utilized in Defendant's NOOK;[21] and (3) the deposition testimony of Mr. Burns, Plaintiff's damages expert, in which he stated that he assigned no value to any specific portion of Plaintiff's trade secret. (Kash Decl., Ex. 25.) In response, Plaintiff submits evidence to show that its trade secrets have independent economic value.[22]

Given the parties' conflicting evidence, the Court finds that material issues of fact exist regarding whether Plaintiff's trade secrets have independent economic value. Accordingly, summary judgment is not appropriate as to this issue.

**b.   Whether Defendant Misappropriated Any of Plaintiff's Trade Secrets**

---

[20] (Kash Decl., Ex. 1.)

[21] (Kash Decl., Ex. 24.)

[22] (See White Opp'n Decl., Exs. 12, 13, 15, 19.) The Court does not discuss this evidence in detail here because it has been designated as confidential.

10

Defendant further contends it did not misappropriate any of Plaintiff's trade secrets because: (1) Defendant independently developed Plaintiff's alleged trade secrets; and (2) Plaintiff never disclosed a "single application" to Defendant to perform each function required by Plaintiff's trade secrets. (Defendant's Motion at 21-26.) The Court addresses each of Defendant's contentions in turn.

Misappropriation of a trade secret includes: "(1) Acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means; or (2) Disclosure or use of a trade secret of another without express or implied consent by a person who: . . . (B) At the time of disclosure or use, knew or had reason to know that his or her knowledge of the trade secret was: (i) Derived from or through a person who had utilized improper means to acquire it." Cal. Civ. Code § 3426.1(b). "'Improper means,' in turn, is defined to include 'theft, bribery, misrepresentation, breach or inducement of a breach of a duty to maintain secrecy, or espionage through electronic or other means.'" DVD Copy Control Ass'n., 116 Cal. App. 4th at 251 n.7 (quoting Cal. Civ. Code § 3426.1(b)). Information acquired through independent derivation, on the other hand, is not misappropriation. Id.

Here, Defendant submits the following evidence that it did not misappropriate Plaintiff's alleged trade secrets: (1) an expert declaration from Dr. Silzars opining that Defendant independently developed the NOOK, which does not incorporate several aspects of Plaintiff's claimed trade secrets;[23] (2) internal documents showing that Defendant considered many of the functionality, display and hardware options of Plaintiff's trade secrets prior to its meetings with Plaintiff;[24] (3) a declaration from Peter Farago, one of Defendant's eReader consultants, attaching

---

[23] (See, e.g., Silzars Decl. ¶¶ 30, 83-88, 90, 177, 203.)

[24] (See, e.g., Declaration of Anthony Astarita in Support of Motion for Summary Judgment, Exs. 1B, 1C, hereafter, "Astarita Decl.," Docket Item Nos. 154-55 (filed under seal); see also Declaration of Peter Farago in Support of Motion for Summary Judgment, Exs. 1-3, hereafter, "Farago Decl.," Docket Item No. 146 (filed under seal); Kash Decl., Exs. 12, 13, 20-22.)

11

various concepts that he created which incorporate certain aspects of Plaintiff's trade secrets,[25] (4) a chart summarizing Defendant's independent development efforts with supporting documentation;[26] and (5) deposition testimony from Dr. Teng that Plaintiff never disclosed a single application to Defendant that incorporated every function that Plaintiff claims is a trade secret.[27]

In response, Plaintiff submits the following evidence that Defendant misappropriated its trade secrets: (1) an expert declaration from Dr. Nutt opining that Defendant did not independently develop the NOOK, which incorporates several aspects of Plaintiff's claimed trade secrets;[28] (2) the deposition testimony of Wei Zhu, one of Plaintiff's employees who was involved in the parties' meetings, which states that Plaintiff disclosed its trade secrets to Defendant;[29] and (3) the deposition testimony of Dr. Teng,[30] which states that Defendant was unaware of the elements of Plaintiff's trade secrets prior to its meetings with Plaintiff, that Plaintiff disclosed its trade secrets to Defendant during their meetings and that Defendant wrongfully incorporated those secrets into the NOOK.

Upon review of the evidence submitted, the Court finds that Plaintiff has presented sufficient evidence to permit a jury to reasonably infer that Defendant improperly used or disclosed at least some of Plaintiff's trade secrets information. There is significant factual dispute, however, as to whether Plaintiff's information had a substantial influence on the NOOK's design, or whether Defendant independently developed all of the NOOK's features. Moreover, comparing the specific features of the NOOK with Plaintiff's alleged trade secrets is a fact-intensive task best left to a jury. Thus, summary judgment is improper as to the issue of whether Defendant misappropriated Plaintiff's trade secrets.

---

[25] (Farago Decl. ¶¶ 1-6, Exs. 1-3.)

[26] (Defendant's Motion, Appendix C.)

[27] (See, e.g., Kash Decl., Ex. 1.)

[28] (Nutt Decl., ¶¶ 83-84.)

[29] (White Opp'n Decl., Ex. 16.)

[30] (White Opp'n Decl., Exs. 10, 15.)

In sum, Defendant is entitled only to partial summary judgment on Plaintiff's misappropriation claims as to Trade Secret Number 1 because the Court finds that the information was publicly disclosed in Plaintiff's published patent applications. However, genuine issues of fact preclude summary judgment as to whether Trade Secret Numbers 2 through 4 are protectable. Finally, Defendant is not entitled to summary judgment as to whether it misappropriated Plaintiff's trade secrets.

Accordingly, the Court GRANTS in part and DENIES in part Defendant's Motion for Summary Judgment as to Plaintiff's misappropriation of trade secret causes of action.

### 2. Breach of Contract

Defendant also moves for summary judgment on Plaintiff's claim for breach of the parties' NDA on the grounds that: (1) Plaintiff's confidential information was already known to Defendant; and (2) Plaintiff's confidential information was an obvious combination of known eReader elements. (Defendant's Motion at 26-28.) The Court addresses each of Defendant's grounds in turn.

Under New York law,[31] the elements of a breach of contract claim are: "(1) the existence a contract; (2) due performance of the contract by the plaintiff; (3) breach of contract by the defendant; and, (4) damages resulting from the breach." Marks v. New York Univ., 61 F. Supp. 2d 81, 88 (S.D.N.Y. 1999). Moreover, if a party uses an idea in violation of a confidentiality agreement, it is liable under New York's "submission-of-idea" doctrine. See Nadel v. Play-By-Play Toys & Novelties, Inc., 208 F.3d 368, 373-74 (2d Cir. 2000). Under the submission-of-idea doctrine in a breach of contract case, a plaintiff must also show that the idea was novel to the defendant.[32] Id.

---

[31] As a threshold matter, Plaintiff's claim for breach of the parties' NDA is governed by New York law. (Docket Item No. 77 at 7; see also White Decl., Ex. H ("This Agreement shall be governed in all respects by the substantive laws of the state of New York without regard for conflict of law principles.").)

[32] "For property-based claims, such as misappropriation, a plaintiff must show originality, that is, general novelty to the world-at-large. For contract-based claims, a plaintiff need not show originality, but must show novelty to the defendant." Alliance Sec. Prods. v. Fleming Co., 471 F. Supp. 2d 452, 459 n.47 (S.D.N.Y. 2007).

13

at 380. Novelty is determined through a fact-specific inquiry that focuses on the perspective of the particular defendant. Id.

Here, the parties' NDA forbids certain disclosures and uses of the parties' "Confidential Information:"

> Each party shall regard and preserve as confidential all Confidential Information of the other which may be obtained from any source as a result of this Agreement. In maintaining confidentiality hereunder, each party shall not, without first obtaining the written consent of the other, disclose or make available to any person, firm or enterprise, reproduce or transmit, or use (directly or indirectly) for its own benefit or the benefit of others, any such Confidential Information. Each party's use and/or distribution of the other party's Confidential Information shall be limited to its own employees, agents, consultants and other representatives (each herein, a "Representative") on a "need to know" basis subject to the obligations set forth in Section 3 hereof. Without the prior written consent of the other party, neither party can disclose to any third party other than their respective Representatives, (a) the fact that the Confidential Information has been made available to them or that they have inspected any portion of the Confidential Information, (b) the fact that any discussions or negotiations are taking place concerning any possible transactions between the parties, or (c) any of the terms, conditions or other facts with respect to any possible transaction including the status thereof.

(White Decl., Ex. H at 1.) Further, the NDA defines "Confidential Information" as "specific information of the Disclosing Party relating to a project or work effort contemplated by the parties, as well as all other information related to the Disclosing Party's past, present and future plans, businesses, activities, customers and suppliers."[33] (Id.) "Confidential Information" excludes, however, information that "is already known to the Receiving Party" or "has been independently developed by the Receiving Party." (Id.)

In support of its contention that Plaintiff's confidential information was already known and not novel, Defendant relies on the same evidence noted above with respect to its claimed independent development of the NOOK. (Defendant's Motion at 26-27.) Similarly, Plaintiff relies on the same evidence that Defendant was unaware of the elements of Plaintiff's trade secrets prior to

---

[33] The Court rejects Defendant's contention that the Special Master defined "Confidential Information" under the parties' NDA to include only the information Plaintiff identified as a trade secret in Discovery Order Number 3. (Defendant's Motion at 27). Rather, upon review, the Court finds that Discovery Order Number 3 only deals with Plaintiff's motion to compel further responses to its first set of requests for production. (See Docket Item No. 101.)

14

its meetings with Plaintiff.[34] Since the Court has found that genuine issues of material fact preclude summary judgment as to whether Defendant independently developed the NOOK, Defendant is similarly not entitled to judgment as a matter of law with respect to breach of the parties' NDA.

Accordingly, the Court DENIES Defendant's Motion for Summary Judgment as to Plaintiff's breach of contract claim.

### 3.     Unfair Competition Law

Defendant moves for summary judgment on Plaintiff's claims for violation of California's UCL on the grounds that: (1) Plaintiff's claims cannot be based on any breach of the NDA; (2) Plaintiff's claims cannot be based on Defendant's exploiting Plaintiff's confidential information; and (3) Defendant's advertising regarding the NOOK was not false or misleading. (Defendant's Motion at 26-28.) The Court addresses each of Defendant's grounds in turn.

Section 17200 of the UCL prohibits "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising." Cal. Bus. & Prof. Code § 17200. Because section 17200 is written in the disjunctive, a business practice need only meet one of the three criteria—unlawful, unfair, or fraudulent—to violate the UCL. Daro v. Superior Court, 151 Cal. App. 4th 1079, 1093 (Cal. Ct. App. 2007). "Under its 'unlawful' prong, the UCL borrows violations of other laws . . . ." Berryman v. Merit Prop. Mgmt., 152 Cal. App. 4th 1544, 1554 (Cal. Ct. App. 2007) (quotation and citation omitted). "Thus, a violation of another law is a predicate for stating a cause of action under the UCL's unlawful prong." Id. For example, a claim for trade secret misappropriation can also support a claim for violation of the UCL. Imax Corp. v. Cinema Techs., Inc., 152 F.3d 1161, 1169 (9th Cir. 1998). A breach of contract claim, however, may only form the basis of a section 17200 claim if the breach itself is "unlawful, unfair, or fraudulent." Puentes v. Wells Fargo Home Mortg., Inc., 160 Cal. App. 4th 638, 645 (Cal. Ct. App. 2008). Finally, under the "fraudulent" prong, a claim "can be based upon representations that deceive because they are untrue

---

[34] (Plaintiff's Opposition to Defendant's Motion for Summary Judgment at 26-27, hereafter, "Opp'n," Docket Item No. 153 (filed under seal).) In addition, Plaintiff relies on a statement made by Mr. William Lynch, Jr., Defendant's president, that Plaintiff's design concepts were "innovative." (White Decl., Ex. I.)

15

as well as representations that may be accurate on some level but nonetheless tend to mislead or deceive." Gutierrez v. Wells Fargo Bank, N.A., No. C 07-05923, 2010 U.S. Dist. LEXIS 85123, at *130 (N.D. Cal. Aug. 10, 2010).

Here, contrary to Defendant's contention, Plaintiff's claim under the UCL is not solely based on a breach of the NDA. Rather, Plaintiff contends that Defendant's breach was unlawful because it involved the misappropriation and misuse of Plaintiff's proprietary information. (Opp'n at 24-27.) Moreover, Plaintiff claims that Defendant induced Plaintiff into meetings by representing that it would maintain Plaintiff's information in confidence, knowing that it would not keep that promise. (Id.) In support of these allegations, Plaintiff submits the following evidence: (1) deposition testimony from Dr. Teng, Ms. Zhu, Mr. Baker, Mr. Lynch and Anthony Astarita, Defendant's Vice-President of Digital Products, showing disclosure and use of Plaintiff's confidential information;[35] and (2) various internal documents from Defendant showing improper disclosures of Plaintiff's confidential information.[36] Given this evidence, the Court finds that Plaintiff has presented sufficient evidence to permit a jury to reasonably infer that Defendant violated section 17200 by its alleged breach of the parties' NDA and misappropriation of trade secrets.[37] Accordingly, the Court finds summary judgment improper as to this issue.

The Court also rejects Defendant's second contention that Plaintiff's UCL claim cannot be based on Defendant's alleged exploitation of Plaintiff's confidential information due to preemption. (Defendant's Motion at 28.) As the Court found in its April 8 Order:

> [I]f the confidential information allegedly disclosed is proved to be a trade secret, then the UCL claim based on this allegation is preempted. . . . However, if the confidential information is not a trade secret, then preemption would not apply because the claim would seek a civil remedy not based on the misappropriation of a trade secret.

---

[35] (See, e.g., White Decl., Exs. A, C, I, J, N.)

[36] (See, e.g., White Decl., Exs. Q, O, AA.)

[37] See DocMagic, Inc. v. Ellie Mae, Inc., No. 09-04017, 2010 U.S. Dist. LEXIS 108628, at *55 (N.D. Cal. Oct. 12, 2010) (breach of contract may form the basis of a section 17200 claim where the breach involves the misappropriation of trade secrets).

16

(April 8 Order at 4.) Because the Court has determined that Trade Secret Number 1 is not entitled to protection, Plaintiff's UCL claim based on improper use of that information would not be preempted. See Cal. Civ. Code § 3426.7(b). With respect to Trade Secret Numbers 2-4, issues of fact preclude summary judgment as to whether these secrets are protectable under the law. Thus, the Court finds that a preemption determination as to Trade Secret Numbers 2-4 is premature.

Finally, issues of fact also preclude summary judgment as to whether Defendant's advertising regarding the NOOK was false or misleading.[38] Several of the allegedly false advertisements refer to the NOOK as being the "first" eReader to have certain features, such as a color touchscreen. (Kash Decl., Ex. 52.) Although it is undisputed that the NOOK was available for consumer purchase before Plaintiff's Alex, such statements could still be actionable if they were intended to mislead the average consumer into thinking that Defendant, rather than Plaintiff, was the inventor of these concepts. Moreover, as noted above, it is heavily disputed whether Plaintiff was the first to create an eReader with certain claimed features, or whether Defendant independently developed these features prior to its meetings with Plaintiff. Thus, Defendant fails to present sufficient evidence to warrant judgment as a matter of law for Plaintiff's false advertising claim.

Accordingly, the Court DENIES Defendant's Motion for Summary Judgment as to Plaintiff's UCL claims.

**B.    Plaintiff's Motion for Summary Judgment**

Plaintiff moves for summary judgment on the grounds that it is entitled to judgment as a matter of law on its claims for: (1) breach of contract; and (2) violations of the UCL. (Plaintiff's Motion at 1.) The Court addresses each of Plaintiff's claims in turn.

**1.    Breach of Contract**

Plaintiff moves for summary judgment on its breach of contract claims on the ground that Defendant breached the parties' NDA by disclosing Plaintiff's confidential information to several

---

[38] Competitors can bring section 17200 claims based on allegedly false advertising. See, e.g., Landayan v. Wash. Mut. Bank, No. 09-0916, 2009 U.S. Dist. LEXIS 93308, at *8 (N.D. Cal. Sept. 18, 2009).

17

parties and employees who were not on a need-to-know basis. (Plaintiff's Motion at 15-20.) Because the Court has previously found that there are significant factual issues as to whether Defendant breached the parties' NDA, summary judgment for Plaintiff is not appropriate at this time.

Accordingly, the Court DENIES Plaintiff's Motion for Summary Judgment as to Plaintiff's breach of contract claim.

### 2. Unfair Competition Law

Plaintiff moves for summary judgment on its UCL claims on the grounds that: (1) Defendant used Plaintiff's confidential information to develop the NOOK; (2) Defendant made false and misleading statements to the public that the NOOK was the "first" eReader to include the features that Defendant allegedly stole from Plaintiffs. (Plaintiff's Motion at 20-24.) Because the Court has previously found that there are triable issues of fact with respect to Plaintiff's UCL claims, summary judgment for Plaintiff is not appropriate at this time.

Accordingly, the Court DENIES Plaintiff's Motion for Summary Judgment as to Plaintiff's UCL claims.

## V. CONCLUSION

The Court GRANTS in part and DENIES in part Defendant's Motion for Summary Judgment and DENIES Plaintiff's Motion for Summary Judgment.

On **February 7, 2011 at 11 a.m.**, the parties shall appear for a Preliminary Pretrial Conference. On or before **January 28, 2011**, the parties shall file a Joint Preliminary Pretrial Statement. The Statement shall include, among other things, the parties' proposed trial schedule and an update on any settlement efforts.

Dated: December 27, 2010

JAMES WARE
United States District Judge

**THIS IS TO CERTIFY THAT COPIES OF THIS ORDER HAVE BEEN DELIVERED TO:**

David J. Ruderman davidruderman@quinnemanuel.com
Elizabeth J. White bwhite@fenwick.com
J. David Hadden dhadden@fenwick.com
Jennifer A. Kash jenniferkash@quinnemanuel.com
Lynn Harold Pasahow lpasahow@fenwick.com
Melissa J Baily melissabaily@quinnemanuel.com
Michael M Davis-Wilson mdaviswilson@fenwick.com
Ryan Aftel Tyz rtyz@fenwick.com
Saina Sason Shamilov sshamilov@fenwick.com
Thomas H R Denver tdenver@mediationmasters.com


**Dated:  December 27, 2010**                             **Richard W. Wieking, Clerk**


                                                          **By:    /s/ JW Chambers**
                                                              **Elizabeth Garcia**
                                                              **Courtroom Deputy**